IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH OLIVER CONSTRUCTION, LLC, et al.**, <br><br> Plaintiffs, <br><br> *v.* <br><br> **UTICA FIRST INSURANCE COMPANY,** <br><br> Defendant. | **CIVIL ACTION** <br><br> **NO. 19-4352-KSM** |

## MEMORANDUM

**Marston, J.**                                                                                                    **July 7, 2020**

Plaintiffs Joseph Oliver Construction, LLC ("Oliver") and Amanda and Brian Burke bring a declaratory judgment action against Oliver's insurer, Defendant Utica First Insurance Company ("Utica First"). (Doc. No. 1.) Plaintiffs seek a determination that the policy Utica First issued to Oliver provides coverage for personal injuries resulting from mold contamination, as such personal injury claims are at issue in an underlying state court action filed by the Burkes against Oliver (the "Burke action"). (*Id.*) Utica First moves to dismiss the action, arguing that the Burkes lack standing and that a determination of Utica First's duty to indemnify Oliver in the Burke action is premature because there has not yet been a judgment in the Burke action. (Doc. No. 7-1.) For the reasons that follow, the Court grants the Motion.

### I.    *Background*

On November 6, 2015, the Burkes filed an Amended Complaint against Oliver and another defendant in the Court of Common Pleas of Montgomery County, in which they asserted numerous claims. (Doc. No. 1 at ¶ 11, Ex. A.) The Burkes alleged that Oliver negligently

performed construction work on their home, causing water intrusion, mold contamination, and structural damage. (*Id.* at ¶ 9.) The Burkes also claimed that Mr. Burke suffered personal injuries, including nodular sclerosis Hodgkin lymphoma and chronic myeloid leukemia, as a result of exposure to the mold contamination. (*Id.* at ¶ 10.)

Shortly thereafter, by letter dated November 23, 2015, Utica First—Oliver's insurer—advised Oliver that it would provide a defense to Oliver in the Burke action. (*Id.* at Ex. B, p. 63.) However, Utica First clarified that the defense was "specifically subject to the denial of coverage set forth herein" and "a full reservation of rights." (*Id.*) Utica First then determined that coverage was precluded for the mold damage claims: Mr. Burke's bodily injury claims and Mrs. Burke's loss of consortium claim. (*Id.* at Ex. B, p. 67.) Utica First relied on the "Wet Rot, Dry Rot, Bacteria, Fungi, or Protists Contracting Operations" exclusion ("Fungi Exclusion") to deny coverage on those claims. (*Id.* at Ex. B, p. 67; Ex. C, p. 84.) The Fungi Exclusion, which was an endorsement to the commercial liability coverage in the policy, states:

> 'We' do not pay for actual or alleged 'bodily injury' or 'property damage' (or 'personal injury' or 'advertising injury,' when provided by this policy) that arises out of 'your work' and that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:
>
> a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or
>
> b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

(*Id.* at Ex. C, Form AP-0689, p. 84.)

The policy also contained a "Virus or Bacteria Exclusion" ("Bacteria Exclusion") endorsement, which provides:

> 'We' do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or

2

> physical distress . . . 3. The Virus or Bacteria exclusion set forth by this endorsement supersedes the 'terms' of any other exclusions referring to 'pollutants' or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

(*Id.* at Ex. C, Form AP 0365, p. 83.) The Bacteria Exclusion provision was "added with respect to all property coverages provided by [the] policy." (*Id.*) A disclosure notice for the Bacteria Exclusion notes that it "applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the Property Coverage Section of the [] policy." (*Id.* at Ex. C, p. 104.)

On September 20, 2019, Oliver and the Burkes filed the instant suit against Utica First, seeking a determination that the policy provides coverage for personal injuries resulting from mold contamination, and therefore applies to the claims asserted in the Burke action. (*Id.* at ¶ 1.) Plaintiffs argue that the Bacteria Exclusion superseded the Fungi Exclusion and therefore the policy provides coverage for such claims. (*Id.* at ¶¶ 17–20.)

On December 16, 2019, Utica First filed a motion to dismiss Plaintiffs' declaratory judgment action. (Doc. No. 7.) Oliver and the Burkes then filed a joint response in opposition to the motion (Doc. No. 10), and Utica First filed a reply brief (Doc. No. 11).

## II. Legal Standard

A party's motion for "want of standing is . . . properly brought pursuant to Rule 12(b)(1)" "because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Under this standard, we must first determine whether the motion presents a facial attack or a factual attack. *The Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack is "an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Id.* at 358. By contrast, a

3

factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* Here, Utica First presents a facial attack, as it argues that the Burkes, by their own pleading, are not party to Oliver's insurance policy and thus lack standing. Accordingly, we "apply the same standard of review [we] would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Id.* The same standard applies for Utica First's ripeness challenge, which also presents a facial attack. *See First Specialty Ins. Co. v. Hudson Palmer Homes, Inc.*, Civil Action No. 17-5732, 2018 WL 6002318, at *2 (E.D. Pa. Nov. 14, 2018).

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (quotation marks and alterations omitted).

### III. Discussion

In moving to dismiss, Utica First makes several contentions: first, that the Burkes lack standing and should be dismissed as plaintiffs; second, that a declaration related to Utica First's duty to defend Oliver in the Burke action is moot because Utica First has already agreed to defend Oliver; third, that a determination of Utica First's duty to indemnify Oliver in the Burke action is

4

premature because there has been no judgment in the underlying action; and fourth, that the policy provides no coverage for the personal injury claims in the Burke action because those injuries are barred by the Fungi Exclusion. (*See* Doc. No. 7-1.) We address Utica First's arguments in turn.

### A.     Standing

Under the federal Declaratory Judgment Act,[1] a district court may "[i]n a case of actual controversy within its jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The threshold question before granting or denying declaratory relief is whether a case or controversy exists. *See Mager v. Travelers Home & Marine Ins. Co.*, Civil Action No. 19-02469, 2020 WL 211548, at *3 (E.D. Pa. Jan. 14, 2020); *Carrasquillo v. Kelly*, Civil Action No. 17-4887, 2018 WL 1806871, at *2 (E.D. Pa. Apr. 17, 2018). "In order to establish standing, a plaintiff must show, among other things, that she is asserting her 'own legal interests rather than those of third parties.'" *Carrasquillo*, 2018 WL 1806871, at *2 (citation omitted).

Here, Utica First argues that the Burkes—injured third parties who are not named insureds under Oliver's Utica First policy and who are not parties to the contract—do not have standing to sue it. (Doc. No. 7-1 at pp. 12–15.) Plaintiffs counter that as injured third parties, the Burkes have an independent interest in the determination of insurance coverage disputes. (Doc. No. 10 at pp. 4–5.) Yet Plaintiffs do not cite to *any* decision holding that an injured third party has standing to *bring* a declaratory judgment action directly against the insurer of an insured tortfeasor (here, Utica First). (*See* Doc. No. 10-1 at pp. 8–9.) Nor could they, as the Third Circuit has not yet ruled on this issue. *See*, *e.g.*, *Mager*, 2020 WL 211548, at *3; *Hickey v.*

---

[1] Plaintiffs seek declaratory relief under the federal Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201 and 2202. (*See* Doc. No. 1 at ¶¶ 1, 27.) Accordingly, Plaintiffs' citation to Pa. C.S. § 7540 is inapposite. (*See* Doc. No. 10-1 at p. 8.)

*Zurich Am. Ins. Co.*, No. 19-1401, 2019 WL 6037080, at *2 (W.D. Pa. Nov. 14, 2019).

In their attempts to buttress their argument that the Burkes have standing, Plaintiffs rely solely on *American Automobile Insurance Co. v. Murray*, 658 F.3d 311 (3d Cir. 2011) and *Federal Kemper Insurance Co. v. Rauscher*, 807 F.3d 345 (3d Cir. 1986). (*See* Doc. No. 10 at p. 8.) In *Murray* and *Rauscher*, the Third Circuit held that injured third parties had standing to *defend* themselves in declaratory judgment actions brought by insurers—in other words, the injured third parties had standing where the insurer had already sued them as *direct defendants*. *See Rauscher*, 807 F.3d at 346–47, 353–54 (holding that, where the insurer brought a declaratory judgment action against the insured and injured third parties, seeking a determination that the car accident was not covered by the policy, a case or controversy existed and the injured third parties had standing to *defend* themselves, such that a default judgment against the insured did not automatically lead to judgment against the injured third parties); *Murray*, 658 F.3d at 319 (concluding that, in a declaratory judgment action brought by the insurer against the injured third party and the insured, "[the injured third party] has standing to appeal the District Court's order . . . [the injured third party] is the directly injured party and its interests in the lawsuit are, therefore, independent of the insured"); *see also id.* (explaining that in *Rauscher*, the Third Circuit "recognized that a 'case or controversy' must exist between the insurance company and the injured third party under such circumstances, *since the insurance company brought the declaratory judgment action against the injured third party* in the hope of attaining a binding judgment against both the insured and the injured party" (emphasis added)).

Plaintiffs' reliance on *Murray* and *Rauscher* is misguided. Courts in this Circuit interpreting those decisions have consistently rejected the argument that individuals in the Burkes' position have standing to sue as third party injured plaintiffs. *See Mager*, 2020 WL

6

211548, at *3–4; *Hickey*, 2019 WL 6037080, at *2; *Carrasquillo*, 2018 WL 1806871, at *2; *cf. Alliance of Nonprofit for Ins. Risk Retention Grp. v. Transdev, Inc.*, 2:16-CV-01896-MJH, 2019 WL 452492, at *4–5 (W.D. Pa. Feb. 5, 2019) ("*ANI*").

For example, in *Carrasquillo v. Kelly*, the plaintiff, an injured third party, brought a declaratory judgment action against the insured tortfeasor and the insurer. 2018 WL 1806871, at *1. The plaintiff sought a determination that the insurer owed the insured duties to defend and indemnify in the underlying state court action between herself and the insured. *Id.* The court distinguished from *Murray* and *Rauscher*, reasoning that those decisions concerned injured third parties asserting *a defense* against a declaratory action brought by the insurer, rather than affirmatively *bringing* such an action against the insurer. *Id.* at *2–3 ("[U]nlike the plaintiffs in *Rauscher* and *Murray* . . . [the plaintiff], rather than the insurance company, initiated this declaratory judgment action and seeks to dictate the terms of the contractual relationship between [the insurer] and [the insured]."). As such, the court "believe[d] it would go beyond the Third Circuit's holding to allow an injured third party . . . to bring a declaratory judgment action against an insurance company." *Id.* at *3.

This court held that the plaintiff lacked standing to bring the declaratory judgment action because, at bottom, she sought "a declaration about third parties' legal interests rather than her own." *Id.* at *4. The court explained:

> [The plaintiff] has requested a declaration that [the insurer, Nationwide] has a duty to indemnify [the insured, Kelly] for the . . . claims in the underlying state court litigation. *In doing so, [the plaintiff] is requesting a declaration regarding what an insurer (Nationwide) is required to do for its insured (Kelly), and not about what the insurer (Nationwide) is required to do for [the plaintiff]. Clearly, [the plaintiff] is asserting the legal interests of a third party rather than her own* and, thus, has no standing to pursue such a claim. Further, [the plaintiff] has not alleged that she has been assigned any rights of [Kelly] under the insurance policy at issue.

*Id.* (emphasis added); *see also Mager*, 2020 WL 211548, at *4 (holding that the plaintiff-injured

7

third party had not demonstrated that she had standing to seek a declaratory judgment, where she was not a party to the insurance policy at issue nor had she presented any record evidence that she had been an assignee of rights under the insurance policy); *Hickey*, 2019 WL 6037080, at *2 ("Plaintiff here, just like the plaintiff in *Carrasquillo*, is asking this Court to issue a declaration about a third party's legal rights and obligations, rather than her own. This Court finds that Plaintiff lacks the standing to do so."); *cf. ANI*, 2019 WL 452492, at *4–5 (finding that the Doe Defendants did not have standing to request the affirmative action they presented in their motion for summary judgment because they did not have a "legal interest" in whether the plaintiff-insurer provided the defendant-insured with a defense).

    We are persuaded by the reasoning in *Carrasquillo* and similar cases, and agree that an injured third party affirmatively seeking a declaratory judgment against an insurer lacks standing to do so. Like the plaintiffs in *Carrasquillo*, *Mager*, and *Hickey*, the Burkes were not a party to the Oliver-Utica First insurance policy, nor did they allege that they had been assigned any of Oliver's rights under the insurance policy. In seeking a determination that Utica First has a duty to indemnify Oliver in the Burke action and that the policy provides coverage for personal injuries arising from mold contamination, the Burkes seek a declaration about what Utica First is required to do for *Oliver*, not about what Utica First is required to do for the *Burkes*. As such, the Burkes seek a declaration about legal interests other than their own, and we hold that they do not have standing to do so. Accordingly, the Burkes' claim against Utica First is dismissed with prejudice, and the Burkes are dismissed as plaintiffs in this action.[2]

---

[2] Utica First also argues that the Burkes lack standing because they are not third-party beneficiaries to the contract between Utica First and Oliver. (Doc. No. 7-1 at pp. 13–14.) Plaintiffs do not address this issue in their response brief. (*See* Doc. No. 10-1.) Even taking the Burkes' allegations as true, we have no reason to conclude that they are third-party beneficiaries to the policy. "To be considered a third party beneficiary in this state, it is necessary to show both parties to the contract had an intent to benefit the third party through the contract and did, in fact, explicitly indicate this intent in the contract." *Baal Corp.*,

### B. Duty to Defend and Duty to Indemnify

An insurer's "duty to defend is distinct from its duty to provide coverage. It is interpreted more broadly than the duty to indemnify." *Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc.*, 803 F. Supp. 2d 339, 344 (E.D. Pa. 2011) (citations omitted). The duty to defend is triggered whenever the factual allegations in the complaint "may *potentially* come within the coverage of the policy." *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 250 (3d Cir. 2019) (emphasis added) (internal quotation marks and citations omitted); *see also Sabia Landscaping v. Merchants Mut. Ins. Co.*, Civil Action No. 13-3820, 2013 WL 6022129, at *2 (E.D. Pa. Nov. 6, 2013). On the other hand, the duty to indemnify "is not necessarily limited to the factual allegations of the underlying complaint"; instead, "there must be a determination that the insurer's policy *actually* covers a claimed incident." *Sapa Extrusions, Inc.*, 939 F.3d at 250 (internal quotation marks and citations omitted).

Here, Utica First observes that although Plaintiffs seek a declaration that the policy provides Oliver with coverage for injuries resulting from mold contamination, they do not specify whether they seek a *defense* for Oliver in the Burke action or *indemnification* of Oliver in the event a judgment is entered against Oliver in the Burke action. (Doc. No. 7-1 at p. 15.) Utica First argues that to the extent Plaintiffs seek a declaration on Utica First's duty to defend Oliver in the Burke action, the request is moot because Utica First already agreed to provide a defense to Oliver in the Burke action, subject to a reservation of rights. (*Id.* at pp. 15–16 (citing

---

*Inc. v. Conn. Indem. Co.*, No. CIV. A. 00-571, 2001 WL 911358, at *1 (E.D. Pa. Aug. 13, 2001) (internal quotation marks and citations omitted) (rejecting the argument that the injured plaintiff was a third-party beneficiary under the insurance policy and finding that the plaintiff lacked standing); *see also Brand v. AXA Equitable Life. Ins. Co.,* Civil Action No. 08-2859, 2008 WL 4279863, at *2–3 (E.D. Pa. Sept. 16, 2008) (concluding, on a motion to dismiss, that the plaintiff lacked standing because there was nothing in the complaint or other documents to show that the defendants intended for the plaintiff to be a third-party beneficiary under the relevant contracts).

Doc. No. 1 at ¶¶ 12–13).) In their response, Plaintiffs explicitly "concede that Utica First is providing . . . Oliver with a defense to the property and personal injury claims in the underlying Burke action." (Doc. No. 10 at ¶ 2; *see also* Doc. No. 10-1 at p. 11 ("Here, Plaintiffs acknowledge that Utica First is providing a defense to Joseph Oliver under a reservation of rights for the property damage and bodily injury claims in the underlying Burke Action.").) Because the parties agree that Utica First has a duty to defend Oliver in the Burke action, we turn to whether Utica First has a duty to indemnify.

Utica First contends that a determination on Utica First's duty to indemnify Oliver is premature because there has not yet been a judgment entered in the Burke action. (Doc. No. 7-1 at pp. 16–20.) Plaintiffs disagree, arguing that they are not seeking a declaration that Utica First owes Oliver indemnification in a *specified amount* (which would be premature) but rather that Utica First has a duty to indemnify Oliver *in the event of liability* in the Burke action. (Doc. No. 10-1 at pp. 9–12.) In drawing such a distinction, Plaintiffs cite to the Pennsylvania Declaratory Judgments Act several times and rely *solely* on Pennsylvania cases interpreting the *state* declaratory judgment statute. (*See id.*) The heart of Plaintiffs' argument is that under the state statute, 42 Pa. C.S. § 7532, this court has the power to determine whether Utica First has a duty to indemnify Oliver. (*See id.*) But Plaintiffs appear to have forgotten that *they* initiated this action in federal court under the *federal* Declaratory Judgment Act.

Significantly, Plaintiffs do not address or distinguish from abundant case law, in which this court, among others, has explained that declaratory judgments concerning an insurer's duty to indemnify are not ripe before the insured has been held liable in the underlying action. *See, e.g.*, *Republic Servs. of Pa., LLC v. Caribbean Operators, LLC*, 301 F. Supp. 3d 468, 474 (E.D. Pa. 2018) ("Liability has not been established in the Underlying Action; therefore, [the

plaintiff's] request for a declaration that [the insurer] has a duty to indemnify it for liability in the Underlying Action is not ripe."); *First Specialty Ins. Co.*, 2018 WL 6002318, at *4 ("[T]he question of whether an insurer has a duty to indemnify is not ripe until there is an actual need for indemnification, that is, until liability has been determined in the underlying action." (internal quotation marks and citations omitted)); *Met. Prop. & Cas. Ins. Co. v. Spayd*, No: 5:16-cv-04693, 2017 WL 3141170, at *2 (E.D. Pa. July 24, 2017) ("The question of whether [the insurer] has a duty to indemnify . . . is 'not ripe for adjudication until the insured is in fact held liable in the underlying suit.'" (citations omitted)); *Slate Bar & Lounge, Inc. v. Founders Ins. Co.*, Civil Action No. 3:15-cv-02251, 2017 WL 4681311, at *7 (M.D. Pa. Oct. 18, 2017) (same); *Sabia Landscaping*, 2013 WL 6022129, at *2, *5 ("It is well-settled under Pennsylvania law that an insurer must indemnify its insured only if liability is found for conduct that actually falls within the scope of the policy.  Thus, a *court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action*." (emphasis added) (internal quotation marks and citations omitted)); *Charter Oak Fire Ins. Co. v. Lazenb*y, No. 1:10-cv-00138-MBC, 2012 WL 2958246, at *9 (W.D. Pa. July 18, 2012) ("Numerous courts, both federal and state, have held that declaratory actions on duty to indemnify only become ripe after the underlying liability is settled."); *Am. States Ins. Co. v. Component Tech., Inc.*, 420 F. Supp. 2d 373, 374 (M.D. Pa. 2005) ("As a general rule, a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action." (internal quotation marks and citations omitted)); *cf. Unionamerica Ins. Co., Ltd. v. J.B. Johnson*, 806 A.3d 431 (Pa. Super. Ct. 2002) ("The duty to indemnify is a conditional obligation.  The duty to

indemnify arises only if, after trial on the third-party claim, it is determined that the loss suffered is covered by the terms of the policy. At this stage, while the trial court properly found Unionamerica was required to defend its insured, the court improperly ruled that Unionamerica had a duty to indemnify Johnson Roofing.").

We are persuaded by such cases. Further, "[t]he existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief." *Am. States Ins. Co.*, 420 F. Supp. 2d at 374 (internal quotation marks and citations omitted); *see also Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) ("[B]ecause the Constitution prohibits federal courts from deciding issues in which there is no case or controversy, declaratory judgments can be issued only where there is an actual controversy" (internal quotation marks and citations omitted)). In the Third Circuit, courts consider three factors to determine whether a matter is ripe for declaratory relief: (1) the adversity of the interests of the parties; (2) the conclusiveness of the judgment; and (3) the practical help, or utility, of the judgment. *Id.*

*American States Insurance Co. v. Component Technologies, Inc.* is instructive, as the court considered similar factual allegations and arguments to those currently presented to us here. In *American States Insurance Co.*, the insurer brought a declaratory judgment action, seeking clarification of its duties to defend and indemnify the insured in an action brought in state court by an injured third party. 420 F. Supp. 2d at 374. After noting that the insurer did not contest its duty to defend and was indeed defending the insured in the underlying action, the court dismissed the matter, without prejudice, as unripe. *Id.* In its analysis, the court examined the three *Step-Saver* factors. *Id.* at 375. First, the court concluded that the parties' interests were not sufficiently adverse, explaining: "Plaintiffs have a duty to defend Defendants in the

underlying lawsuit.  Rather than having divergent interests, they share the interest of proving that Defendants are not liable in the underlying suit." *Id.*  Second, the court found that it could not provide a conclusive ruling, reasoning that "[a]ny declaratory ruling in this action regarding [the insurer's] duty to indemnify would be contingent upon the insureds subsequently being held liable in the underlying lawsuit . . . The extent of [the insurer's] duty to indemnify . . . depends on the extent of the liabilities that at present are merely hypothetical." *Id.*; *see also Charter Oaks Ins. Co.*, 2012 WL 2958246, at *8 (dismissing the matter as unripe and finding that a judgment would not be sufficiently conclusive because "any declaration about duty to indemnify would be hypothetical, as it would be contingent on a liability determination in the underlying action").  Finally, the court noted that a declaratory judgment would not be useful, rejecting the plaintiff's argument that a declaratory judgment could help the parties settle the underlying case:

> Under this argument, every advisory opinion would be helpful in the sense that it allows a party or potential litigant to seek legal advice from an Article III judge. Settlement, of course, is no foregone conclusion, and our opinion in this case may be of no utility at all in the event that the underlying suit proceeds to trial and Defendants are absolved of liability.

420 F. Supp. 2d at 375; *see also id.* at 376 ("Our judgment would merely provide advice and guidance to Plaintiff as to how to proceed through settlement negotiations.  This is precisely the type of abstract disagreement that the ripeness doctrine is designed to avoid."); *Charter Oaks Ins. Co.*, 2012 WL 2958246, at *9 (reasoning that a ruling would be of little utility and rejecting the parties' argument that a declaratory judgment could influence the course of the underlying action).

The same logic holds true here with respect to each of the *Step-Saver* factors.  Like the insurer in *American States Insurance Co.*, Utica First has already agreed to defend its insured, Oliver, in the Burke action and, as a result, both Utica First and Oliver share the interest of proving that Oliver is not liable in the Burke action.  Because the parties do not have adverse

interests, this action is not ripe. Second, as in *American States Insurance Co.*, we cannot provide a conclusive ruling because any determination about Utica First's duty to indemnify is contingent on Oliver being held liable in the Burke action, which is "merely hypothetical" at this stage. Finally, we find our ruling would be of little utility to the parties. Plaintiffs argue that a decision on Utica First's duty to indemnify Oliver in the Burke action "would foster efficiency and judicial economy," noting that the uncertainty "has effectively eviscerated the parties' ability to engage in meaningful settlement negotiations." (Doc. No. 10-1 at p. 12.) As such, Plaintiffs argue that our judgment "would likely result in a settlement of the Burke action." (*Id.*) Like the *American States Insurance Co.* court, we are unpersuaded by this argument. Even if we did offer a view on whether Utica First has a duty to indemnify Oliver—which would be an advisory opinion at this point—it is not a foregone conclusion that the parties would settle the Burke action. Because the parties' interests are not adverse and because a ruling would be inconclusive and of little help to the parties, we will dismiss this action as unripe, without prejudice.[3]

### IV. Conclusion

We dismiss the Burkes' claim against Utica First and dismiss the Burkes as plaintiffs, with prejudice, since the Burkes are injured third parties and do not have standing to sue Utica First. The parties agree that Utica First owes Oliver a defense in the Burke action and that Plaintiffs' declaratory judgment action, seeking a determination of coverage of personal injuries resulting from mold contamination, relates to Utica First's duty to indemnify. Accordingly, we dismiss this action as unripe, without prejudice.

An appropriate order follows.

---

[3] Because we hold that the issue of whether Utica First owes Oliver a duty to indemnify is not ripe for adjudication, we do not address the parties' remaining arguments as to whether the policy at issue "actually covers" the claimed incident.